**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2532
_____

TOWER HEALTH, FKA READING HEALTH SYSTEM; PI ONE, LLC, NKA
BRANDYWINE HOSPITAL; PI TWO, LLC, NKA CHESTNUT HILL HOSPITAL; PI
THREE, LLC, NKA JENNERSVILLE HOSPITAL, LLC; PI FOUR, LLC, NKA
PHOENIXVILLE HOSPITAL; PI FIVE, LLC, NKA POTTSTOWN HOSPITAL, LLC;
PI SIX, LLC, NKA TOWER HEALTH ENTERPRISES, LLC; PI SEVEN, LLC, NKA
TOWER HEALTH MEDICAL GROUP HOLDING COMPANY, LLC; TOWER
HEALTH MEDICAL GROUP HOLDING COMPANY, LLC,
Appellants

v.

CHS/COMMUNITY HEALTH SYSTEMS, INC.; PENNSYLVANIA HOSPITAL
COMPANY, LLC; POTTSTOWN HOSPITAL COMPANY, LLC
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 5-19-cv-02782)
U.S. District Judge:  Honorable Edward G. Smith
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
July 12, 2024
_____

Before:  SHWARTZ, PHIPPS, and MONTGOMERY-REEVES, Circuit Judges.

(Filed:  August 20, 2024)

_____

OPINION*
_____

SHWARTZ, <u>Circuit Judge</u>.

Tower Health and its affiliates ("Tower") purchased hospitals from Community

Health Systems, Inc. and its affiliates ("CHS"). Tower asserts that CHS breached the

purchase agreement. The District Court disagreed and entered a judgment in favor of

CHS. For the following reasons, we will affirm.


I

From 2003 to 2017, CHS owned the Pottstown Hospital ("Hospital"), which had a

(1) certification of compliance with the conditions of participation ("COP") in the

Medicare and Medicaid programs from the Centers for Medicare & Medicaid Services

("CMS"),[1] <u>see</u> 42 C.F.R. § 482, and (2) Pennsylvania license to operate.[2] To obtain these

designations, a hospital must, among other things, comply with the National Fire

_____

* This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] CMS is a division of the United States Department of Health and Human Services that administers the Medicare and Medicaid programs.

[2] State regulators, like the Pennsylvania Department of Health ("PA DOH"), survey hospitals for compliance with the COP and report their findings to CMS, which may then issue a certification. <u>See</u> 42 C.F.R. §§ 488.12, 488.26(c)(1). PA DOH also issues state licenses after conducting surveys to verify that "the facility is in compliance with the state licensure regulations." Div. of Safety Inspection, Pa. Dep't of Health, <u>Definitions</u>, https://sais.health.pa.gov/CommonPOC/content/publiccommonpoc/divText/DSIdefinition s.htm (last visited June 14, 2014). Obtaining a license after a survey demonstrates compliance with Pennsylvania's requirements. <u>See</u> 28 Pa. Code § 101.51; 35 P.S. § 448.802a.

2

Protection Association's ("NFPA") 101 Life Safety Code ("LSC"). See 42 C.F.R. §

482.41(b)(1)(i); NFPA, NFPA 101: Life Safety Code Handbook (2012); 28 Pa. Code §

101.42a. The LSC prescribes specific fire-safety rules, as well as alternate methods to

satisfy them. Tower Health v. CHS Cmty. Health Sys., Inc., No. 19-2782, 2022 WL

4080771, at *9 (E.D. Pa. Sept. 6, 2022) ("Dist. Ct. Op."). One method is a Fire Safety

Evaluation System (an "FSES"), which allows a hospital to offset a fire-safety deficiency

by demonstrating it has comparable safety measures to address the deficiency.

In 2005, 2006, 2009, 2011, and 2013 the Pennsylvania Department of Health ("PA

DOH") surveyed the Hospital, each time, finding that the Hospital failed to adhere to the

LSC's requirement that the building be able to stand intact for at least two hours during a

fire (the "deficiency"), but that the Hospital was compliant because of CHS's FSES

submissions. In 2015, The Joint Commission ("TJC"), a CMS-approved accreditation

program, see 42 U.S.C. § 1395bb(a), surveyed the Hospital, found the same, and

accredited it effective May 16, 2015 to May 16, 2018,[3] which resulted in CMS

designating the Hospital with a "deemed status,"[4] 42 C.F.R. § 488.6 (internal quotation

---

[3] A TJC survey can satisfy both the COP certification requirements, 42 C.F.R. § 488.6, and Pennsylvania's licensing requirements, see 28 Pa. Code. § 101.62.

[4] "Deemed status means that CMS has certified a provider . . . for Medicare participation, based on all of the following criteria having been met: [t]he provider . . . has voluntarily applied for, and received, accreditation from a CMS-approved national accrediting organization under the applicable Medicare accreditation program; the accrediting organization has recommended the provider or supplier to CMS for Medicare participation; CMS has accepted the accrediting organization's recommendation; and CMS finds that all other participation requirements have been met." 42 C.F.R. § 488.1.

3

marks omitted) and eligible to participate in the Medicaid/Medicare programs, 42 C.F.R. § 488.6.[5]

In 2017, Tower and CHS entered an Asset and Membership Interest Purchase Agreement (the "APA") pursuant to which Tower purchased five hospitals from CHS, including the Hospital. In the APA, CHS warranted that as of May 30, 2017 (the execution date) and October 1, 2017 (the closing date) (together, the "relevant dates"), each hospital was (1) "licensed . . . pursuant to the applicable laws of . . . Pennsylvania," App. 158 (APA § 3.6); (2) "in compliance in all material respects with" the COP, App. 158 (APA § 3.7); and (3) "in compliance in all material respects with all applicable statutes, rules, regulations, and requirements of [] [g]overnment [e]ntities having jurisdiction over the [f]acilities and [their] operations," App. 159 (APA § 3.8). APA § 3.4 further required CHS to provide the hospitals' financial statements, prepared in accordance with the Generally Accepted Accounting Principles ("GAAP"), which require, among other things, identifying contingent liabilities.[6]

---

[5] The surveys referenced herein were based on the 2000 version of the LSC. In May 2016, CMS adopted the 2012 edition of the NFPA 101 LSC. See Notification of Final Rule Published: Adoption of 2012 Life Safety and Health Care Facilities Code | CMS, https://www.cms.gov/medicare/provider-enrollment-and-certification/surveycertificationgeninfo/policy-and-memos-to-states-and-regions-items/survey-and-cert-letter-16-22 (last visited June 14, 2024) (the "Final Rule Notification").

[6] The APA also provided that "[o]ther than with respect to [its] representations and warranties[,]" Tower was purchasing the hospitals "AS IS[.]" App. 167 (APA § 3.22). The APA additionally provided that:

> [i]n the event a party elects to incur legal expenses to enforce or interpret any provision of this Agreement by judicial proceedings, the prevailing party will be entitled to recover such legal expenses, including, without limitation,

4

In February 2018, TJC surveyed and accredited the Hospital. The following month, PA DOH surveyed the Hospital on behalf of CMS to verify TJC's findings and cited the deficiency. In June 2018, Tower received notice from CMS that the Hospital (1) failed to comply with the COP because of the deficiency, and (2) needed to submit a plan of correction. The notice stripped CHS of its deemed status, but did not (1) retroactively revoke the Hospital's compliance or certification status, or (2) alter the Hospital's ability to participate in the Medicare/Medicaid programs.

Thereafter, Tower (1) sent CHS a notice of claim, asserting that CHS had breached the APA based on the Hospital's non-compliance with the LSC; (2) submitted a plan of correction to CMS, which CMS later approved; and (3) sought indemnity from CHS for the cost to implement the plan.

After CHS declined to indemnify Tower, Tower sued CHS for, among other things, breaching the APA. Following a bench trial, the District Court entered judgment in favor of CHS, holding that CHS (1) did not breach APA §§ 3.6, 3.7, or 3.8, as the Hospital complied with applicable regulatory requirements at the relevant times, and (2) was not obligated under APA § 3.4 to disclose fireproofing costs as a contingent liability under the GAAP. The Court also allowed CHS to seek reasonable attorney's and expert fees.

---

reasonable attorneys' fees, costs, and necessary disbursements at all court levels, in addition to any other relief to which such party shall be entitled.
App. 187 (APA § 12.6).

Subsequently, Tower moved under Federal Rule of Civil Procedure 59(e)[7] to add a claim for breach of APA § 1.4, which provided that "under no circumstances [would] [Tower] be obligated to pay or assume . . . any liability, indebtedness, commitment, or obligation" of CHS. App. 146. The Court denied the motion, reasoning that the claim was not tried by implied consent and that, in any event, it would fail for substantially the same reasons Tower's §§ 3.6, 3.7, and 3.8 claims failed.[8] Tower appeals.

II[9]

We apply Pennsylvania law to determine whether CHS breached the APA. See App. 187 (APA § 12.6 Choice of Law Provision). "The paramount goal of contract interpretation is to determine the intent of the parties[,]" which "is contained in the writing itself." Norfolk S. Ry. Co. v. Pittsburgh & W. Va. R.R., 870 F.3d 244, 253 (3d Cir. 2017) (internal quotation marks and citations omitted). "Generally[,] parties will be

---

[7] Federal Rule of Civil Procedure 15 permits parties to move to amend the pleadings after trial "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent." Fed. R. Civ. P. 15(b)(2).

[8] In that order, the District Court also denied Tower's motion to stay CHS's attorney's fees motion. CHS thereafter filed its fees motion, but the motion has since been stayed.

[9] We have jurisdiction under 28 U.S.C. § 1291, and the District Court had jurisdiction under 28 U.S.C. § 1332. "A timely appeal from an order denying a Rule 59 motion to alter or amend brings up the underlying judgment for review." Quality Prefabrication, Inc. v. Daniel J. Keating Co., 675 F.2d 77, 78 (3d Cir. 1982) (citing Fed. R. App. P. 4(a)(4)). The underlying judgment arose from a bench trial and therefore we review the District Court's findings of fact for clear error and its conclusions of law de novo, VICI Racing, LLC v. T-Mobile USA, Inc., 763 F.3d 273, 282-83 (3d Cir. 2014), including "questions of contract interpretation[,]" Local Union No. 1992 v. Okonite Co., 189 F.3d 339, 341 (3d Cir. 1999). We review an order denying a Rule 59 motion "for abuse of discretion, except over matters of law, which are subject to plenary review." Blystone v. Horn, 664 F.3d 397, 415 (3d Cir. 2011) (internal quotation marks and citation omitted).

6

held to definitions given to words in specialized commercial and trade areas in which they deal." Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1013 (3d Cir. 1980).

As to the relevant warranties, the APA represented that on the relevant dates, the Hospital was (1) licensed in Pennsylvania, see App. 158 (APA § 3.6); (2) "in compliance in all material respects with" the COP, App. 158 (APA § 3.7); and (3) "in compliance in all material respects with all applicable statutes, rules, regulations, and requirements of [] [g]overnment [e]ntities having jurisdiction over the [f]acilities and [their] operations[,]" App. 159 (APA § 3.8).

While the APA does not define the phrase "in compliance," the relevant rules and regulations to which the APA alludes designate CMS and PA DOH as responsible for determining a hospital's compliance. See 42 C.F.R. § 488.12 (explaining that based on survey findings, CMS determines whether a hospital "is eligible to participate in . . . the Medicare program"); id. § 488.26(c)(1) ("The survey process is the means to assess compliance with [f]ederal health, safety and quality standards."); see also 28 Pa. Code § 101.51 (PA DOH "will issue a license valid for two years to any hospital which is in compliance with this subpart"); 35 P.S. § 448.802a (providing that a survey "determin[es] a health care facility's compliance with licensure requirements"). No other entity decides a hospital's compliance, and these entities only issue certifications and licenses if the

7

hospital meets or complies with the applicable statutes, rules, and regulations. Accordingly, in this context, a hospital that is certified and licensed is "in compliance."[10]

Here, the Hospital was both CMS-certified and state-licensed on the relevant dates based on TJC's 2015 survey, which accredited the Hospital "effective May 16, 2015 to May 16, 2018." App. 1913. Neither PA DOH's March 2018 survey nor CMS's June 2018 notice of non-compliance retroactively affected those statuses because (1) as to the CMS certification, a facility certified as compliant with the COP maintains that status until a later survey finds otherwise, see 42 C.F.R. § 488.20 (explaining that a survey certification "that a [hospital] is no longer in compliance with the conditions of participation . . . will supersede . . . [a] previous certification"); see also id. § 488.9(c)(1) ("If a CMS validation survey results in a finding that the [hospital] is out of compliance with one or more [COP], the [hospital] will no longer be deemed to meet the [COP] and will be subject to ongoing review[.]"); and (2) as to Pennsylvania licensure, "[w]henever [PA DOH] proposes to revoke, modify or refuse to issue a license . . ., it will give written notice to the hospital by certified mail[,]" see 28 Pa. Code § 101.103, and the Hospital received no such notice prior to the closing date. Accordingly, neither the 2018 survey nor the CMS notice rendered the Hospital out of compliance on the relevant dates.[11] Similarly, whether the deficiency cited in the 2018 survey predated the relevant dates does not alter the fact that CMS and PA DOH, respectively, certified and licensed the

---

[10] This interpretation does not render APA § 3.8 duplicative of §§ 3.6 or 3.7, as § 3.8, by its plain text, contemplates requirements beyond the licensure and certification requirements of §§ 3.6 or 3.7.

[11] Indeed, the CMS notice did not say that the Hospital was ever noncompliant.

8

Hospital as LSC-compliant at that time, which is what the APA represents in §§ 3.6, 3.7, and 3.8.[12, 13, 14]

CHS also did not breach APA § 3.4. First, the District Court correctly held that CHS was not obligated to disclose to Tower the fireproofing deficiency as a contingent liability under APA § 3.4, as the record makes clear that, prior to the relevant dates, CMS and PA DOH repeatedly regarded the deficiency as accounted for by FSESs and permitted the Hospital to retain its certification and license through the relevant dates. Accordingly, the Court did not err in concluding that Tower failed to show that CHS had a fireproofing liability that required disclosure under APA § 3.4.

---

[12] Moreover, the fact that TJC used the 2000 edition of the LSC when it surveyed the Hospital in 2015 has no impact on the Hospital's compliant status on the relevant dates because, as noted, the Hospital was not found to be out of compliance until June 2018. Additionally, CMS did not adopt the 2012 edition until 2016, after the 2015 TJC survey. See Final Rule Notification.

[13] Tower purchased the hospitals "as is[.]" APA § 3.22's (capitalization omitted). An "'as is' term under Pennsylvania law restricts application of implied warranties but does not preclude claims . . . where the parties have agreed to . . . conflicting contract . . . obligations." Orion Drilling Co. v. EQT Prod. Co., No. 16-1516, 2019 WL 4273861, *20 (W.D. Pa. 2019) (citations omitted); see also PBS Coals, Inc. v. Burnham Coal Co., 558 A.2d 562, 564 (Pa. Super. 1989) ("The warranties which may otherwise be implied by law do not attach when the buyer agrees to accept the goods in the condition in which they are found."). Thus, while § 3.22's "as is" clause bars Tower from suing for breach of any implied warranties, Tower has retained the right to sue for breach of the APA's express ones, including those in §§ 3.6, 3.7, and 3.8. Thus, the District Court was incorrect to say that "as is" clause rendered its claims under those specific provisions "moot." Dist. Ct. Op. at *25-26. Nevertheless, as explained herein, Tower's claims fail because CHS has not breached APA §§ 3.6, 3.7, and 3.8, and so the District Court's error is harmless.

[14] Judge Phipps does not join the conclusion that CHS did not, on this record, breach §§ 3.6, 3.7, and 3.8 of the APA, and he would instead vacate and remand those claims.

9

Similarly, the District Court did not abuse its discretion in denying Tower's motion to amend the pleadings to add an APA § 1.4 claim, which provided that "under no circumstances [would] [Tower] be obligated to pay or assume . . . any liability, indebtedness, commitment, or obligation" of CHS. App. 146. The Hospital's compliant status from 2005 through 2017 bolsters the Court's determination that the evidence did not support Tower's claim that the fireproofing costs that it ultimately incurred were a "liability, indebtedness, commitment, or obligation" of CHS on the relevant dates.[15] App. 146.

III

For the foregoing reasons, we will affirm.

---

[15] The District Court also did not err in allowing CHS to seek attorney's and expert fees because: (1) APA § 12.5 permits the prevailing party to recover "legal expenses, including, without limitation, reasonable attorneys' fees, costs, and necessary disbursements at all court levels," App. 187, and (2) this language encompasses the attorney's and expert fees CHS incurred in successfully defending itself.